**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


KARIN J. BLACK, et al,           )

           Plaintiff,     )    Civil Action No. 10 - 848

                )

           v.       )    Judge David Stewart Cercone

                )    Magistrate Judge Lisa Pupo Lenihan

                )

JP MORGAN CHASE & CO., et al,    )    ECF No. 28

          Defendants.    )


**REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that the Motion of Defendant Discover Financial Services to Compel Arbiration (ECF No. 28) be granted and the Motion to Dismiss the Complaint (ECF No. 28) be denied as moot.  It is further recommended that this case be stayed only as to Defendant Discover Financial Services while Plaintiff submits her claim to arbitration.

## II.    REPORT

### A.    Background and Procedural History

Plaintiff, Karin Black, has filed a purported class action complaint, alleging that the Defendants violated the Sherman Act, 15 U.S.C. §1.  Generally, Black alleges that the Defendants—consumer lenders, credit reporting agencies, and credit scoring companies— conspired to restrain the availability of consumer loans and inflate or fix the price of that credit at artificially high levels, by sharing pricing data in the form of credit history information.  Plaintiff also alleges a national boycott of consumers who are unable or unwilling to pay monopolistic prices.  (Compl. ¶ 67.)  She seeks an order declaring that this action be maintained as a class

action and declaring Plaintiff as representative of the Classes and her counsel as counsel for the Classes; an order enjoining the Defendants' anti-competitive conduct; and an award of damages for herself and the Classes.[1]

In response to the Complaint, Defendant Discover Financial Services ("DFS"), one of three lender defendants in this case, has filed a motion to compel arbitration of Plaintiff's individual claims or, in the alternative, to dismiss the Complaint (ECF No. 28), which is the subject of this Report and Recommendation. In support of its alternative argument seeking dismissal of the Complaint pursuant to Rule 12(b)(6), DFS joins in the memorandum of law filed by the other two lender defendants, JP Morgan Chase & Co. and Bank of America Corporation.[2] Plaintiff filed a memorandum of law opposing the motion to compel arbitration and reply brief. On February 10, 2011, the Court heard oral argument on DFS's motion. As the motion has been fully briefed and argued, it is now ripe for disposition.

### B. Legal Standard – Motion to Compel Arbitration

The standard of review on a motion to compel arbitration is the same as the standard of review on a motion for summary judgment. *Quilloin v. Tenet HealthSystem Philadelphia, Inc.,* 763 F.Supp. 2d 707, 715 (E.D.Pa. 2011) (quoting *Hopkins v. New Day Fin.,* 643 F.Supp. 2d 704, 713-14 (E.D.Pa. 2009) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 & n. 9 (3d Cir.1980))); *see also Kirleis v. Dickie, McCamey & Chilcote,* 560 F.3d 156, 159 n. 3 (3d Cir.2009). "'Accordingly, the Court may consider all affidavits, exhibits and discovery in the

---

[1] Black invokes this Court's subject matter jurisdiction pursuant to 15 U.S.C. §§ 15 and 26, and 28 U.S.C. §§1331 and 1337. Venue lays in this district under 15 U.S.C. §§15, 22, and 26, and 28 U.S.C. § 1391.

[2] JP Morgan Chase and BOA filed a motion to dismiss the Complaint under Rule 12(b)(6) (ECF No. 32) arguing that under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny, Plaintiff failed to allege sufficient facts to show that her antitrust claims against them were plausible. On August 10, 2011, the undersigned filed a Report and Recommendation (ECF No. 84) recommending that the motion to dismiss (ECF No. 32) filed by JP Morgan Chase and BOA be granted. Because the Court concludes that this case should proceed to arbitration, the Court does not reach the merits of DFS's motion, in the alternative, to dismiss the Complaint under Rule 12(b)(6).

record.'" *Quilloin,* 763 F.Supp. 2d at 715 (quoting *Hopkins,* 643 F.Supp. 2d at 713-14 (citing *Par-Knit Mills,* 636 F.2d at 54 & n. 9)). A motion to compel arbitration should be granted only where there is "'no genuine issue of fact concerning the formation of the agreement'" to arbitrate. *Kirleis,* 560 F.3d at 159 (quoting *Par-Knit Mills,* 636 F.2d at 54). "In making this determination, the party opposing arbitration is entitled to 'the benefit of all reasonable doubts and inferences that may arise.'" *Id.*

C.  **Facts**[3]

The facts relating to DFS's motion to compel arbitration are straightforward and are not disputed.[4] Plaintiff's Discover Card is issued by Discover Bank, a federally issued bank chartered and incorporated in the State of Delaware, with its principal place of business in Delaware. (Declaration of Leo Linian ("Linian Decl."), ¶¶ 2-4, ECF No. 28-2.) Discover Bank operates a facility in Delaware that provides a full array of retail and depository banking services to its customers. (Linian Decl., ¶ 3.) DFS Services LLC is the servicing affiliate of Discover Bank and, as such, administers a variety of the business aspects of the Discover Card program, including the servicing and collection of credit card accounts, the issuance of statements, the handling of disputes and settlement with merchants. (Linian Decl., ¶¶ 2, 5.) Both DFS Services LLC and Discover Bank (collectively, "Discover") are subsidiaries of DFS, are incorporated in the State of Delaware, and have their principal places of business in Illinois. (Linian Decl., ¶¶ 2-3.)

---

[3] The factual allegations relating to the alleged antitrust violations are set forth in detail in Part II.C. of the Court's Report and Recommendation (ECF No. 84) on the motions to dismiss filed by the other defendants, and thus, will not be repeated here.

[4] In support of its motion to compel arbitration, DFS has submitted the declaration of Leo Linian, Director of Collection Strategy for DFS Services LLC, as subsidiary of Discover Financial Services. (Linean Decl., ¶2.) Plaintiff has not submitted any affidavit or other competent evidence to contradict Mr.Linean's statements.

Plaintiff has been a Discover credit card member since 1999. (Linian Decl., ¶6.) When Ms. Black's application was approved, her credit card and the Cardmember Agreement were mailed to her at the address she provided in her application, per Discover's standard practice. (Linian Decl., ¶7.) The Cardmember Agreement provides that by using her credit card, Ms. Black agrees to the terms of the Cardmember Agreement. According to Discover's records, Ms. Black did use her card thereafter. (Linian Decl., ¶ 8.)

The Discover Cardmember Agreement provided to Plaintiff in 1999 contained a broad arbitration provision that encompassed "any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account . . .." (Ex. 1 to Linian Decl. at 8, ECF No. 28-3.) This Cardmember Agreement also provided that it would be governed by Delaware law and applicable federal laws. (Ex. 1 to Linian Decl. at 10.)

The arbitration provision of the Cardmember Agreement has been amended several times since Plaintiff first opened her Discover Card account pursuant to the "Change of Terms" provision of the Cardmember Agreement (Linian Decl. ¶9; Ex. 1 to Linian Decl. at 8), and Delaware law, 5 Del. C. §952(a).[5] When a change has been made to the terms of the Cardmember Agreement, Discover inserts and mails a Notice of Change to the Cardmember Agreement with the billing statements of all Discover card members who have open accounts and are receiving statements. (Linian Decl., ¶ 9.) The Cardmember Agreement provides Ms. Black with the right to reject any such changes to the terms of the Cardmember Agreement and close her account. (*Id.*) According to Discover's records, Ms. Black did not reject any of the changes that Discover Banks made to the terms of her Cardmember Agreement. (*Id.*)

---

[5] The amendments are attached to the Linian Declaration. *See* Linian Decl., ¶10-17.

As amended, the arbitration provision in the 2009 Cardmember Agreement applicable to the current dispute states in relevant part:

> **Arbitration of Disputes**. *Agreement to arbitrate.* In the event of any past, present or future claim or dispute (whether based upon contract, tort, statute, common law or equity) between you and us arising from or relating to your Account, any prior account you have had with us, your application, the relationships which result from your Account or the enforceability or scope of this arbitration provision, of the Agreement, or of any prior agreement, you or we may elect to resolve the claim or dispute by binding arbitration. IF EITHER YOU OR WE ELECT ARBITRATION, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM. PRE-HEARING DISCOVERY RIGHTS AND POST-HEARING APPEAL RIGHTS WILL BE LIMITED. NEITHER YOU NOR WE SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN ARBITRATION BY OR AGAINST OTHER CARDMEMBERS WITH RESPECT TO OTHER ACCOUNTS, OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY ("Class Action Waiver").

Ex. 10 to Linian Decl. at 11, ECF No. 28-4. The arbitration clause also delineates who shall conduct the arbitration:

> The arbitration shall be conducted, at the option of whoever files the arbitration claim, by either the American Arbitration Association (AAA) or the National Arbitration Forum (NAF) in accordance with their procedures in effect when the claim is filed. . . . No other arbitration forum will be permitted, except as agreed to pursuant to either the Changes to this Agreement section or a writing signed by both parties.

*Id.*

In addition, the arbitration clause provides that Discover Bank's "rights and obligations under this arbitration provision shall inure to the benefit of and be binding upon our parent corporations, subsidiaries, affiliates (including, without limitation, DFS Services LLC), predecessors, successors, assigns, as well as the officers, directors and employees of each of

these entities, . . .." *Id.* at 12. As DFS is the parent corporation of Discover Bank (Linian Decl., ¶2), the arbitration provision is binding upon DFS.

In 2003, Plaintiff was given the option of rejecting the arbitration provision without cancelling her account or affecting any of her other rights or privileges under the remainder of the Cardmember Agreement. (Linian Decl., ¶11; Ex. 4, ECF No. 28-3.) In particular, Discover Bank inserted into, and mailed with, Plaintiff's billing statement a **NOTICE OF RIGHT TO REJECT ARBITRATION,**" which became effective April 1, 2003. (Linian Decl., ¶11.) The Notice of Right to Reject Arbitration required that notice of rejection be made in writing and provided to Discover Bank by March 25, 2003. (Ex. 4.) According to Discover's records, Plaintiff did not exercise her right to opt out of, or otherwise reject, the arbitration provision. (Linian Decl., ¶11.)

Similarly, in 2004, 2005, 2006, 2007 and 2008, Discover Bank also sent to Plaintiff notices of amendments to the "Arbitration of Disputes" section, included with her billing statements. (Linian Decl., ¶¶ 12-16; Exs. 5-9 attached thereto, ECF No. 28-4.)

### D.    Analysis

The Federal Arbitration Act ("FAA") "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" 9 U.S.C. § 1, *et seq*.; *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA provides that a written arbitration provision in any contract "evidencing a transaction involving commerce is valid and enforceable, except upon "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[6]    In addition, the FAA favors the enforcement of arbitration

---

[6] The parties do not dispute that the contract in this case involves "commerce" as defined in 9 U.S.C. § 1.

agreements, requiring that such agreement be enforced to the same extent as other contracts. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court . . . for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. § 4.

The FAA clearly reflects a "strong policy in favor of the resolution of disputes through arbitration." *Kirleis,* 560 F.3d at 160 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)). "[T]his presumption in favor of arbitration 'does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Id.* (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

The interpretation and construction of arbitration agreements are determined by reference to federal substantive law. *Harris,* 183 F.3d at 179 (citing *Moses H. Cone*, 460 U.S. at 25, n.32). However, pursuant to section two of the FAA, federal courts may apply state law "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 685 (1996); *Harris*, 183 F.3d at 179 (citing 9 U.S.C. § 2). Thus, a court may turn to "ordinary state-law principles that govern the formation of contracts" when determining whether the parties agreed to arbitrate**.** *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). In addition, state law is applicable where a party raises contract defenses to invalidate arbitration agreements, such as fraud, duress, or unconscionability. *Doctor's Assoc.,* 517 U.S. at 687; *see also Harris*, 183 F.3d at 179 (citing *Doctor's Assoc.*, 517 U.S. at 687; *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).

### 1. Validity and Scope of Arbitration Provision

As a threshold matter, the FAA requires the court to make the following determinations before ordering arbitration: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the specific dispute falls within the scope of that agreement. *Olick*, 151 F.3d at 136 (explaining that a "district court need only engage in a limited review to ensure that the dispute is arbitrable"). DFS contends that these requirements have been satisfied here. As to the first requirement, DFS submits that Plaintiff's Cardmember Agreement and transactions with Discover Bank clearly involve interstate commerce. In addition, DFS points out that the arbitration clause contains an express provision to this effect and states that it shall be governed by the FAA. Plaintiff does not contest this point.

As to whether a valid and enforceable agreement to arbitrate exists between Plaintiff and itself, DFS contends that Ms. Black received the written Cardmember Agreement when she applied for and opened her credit card account with Discover Bank, and used her card. By doing so, she agreed to the arbitration provision. In addition, DFS submits that Plaintiff was notified in writing of her right to reject the arbitration provision and the procedure for doing so, but she did not elect to reject the arbitration provision.[7]

In response, Plaintiff argues that although Discover may have made a one-time offer to opt out of arbitration over seven years ago, she does not recall receiving the offer and thus never actually agreed not to opt out. By relying on silence instead of contacting her to discuss the terms, Plaintiff submits that Discover Bank is simply exercising its superior strength in bargaining power to control the terms and avoid any meaningful negotiations regarding those terms. Plaintiff's argument is unavailing for two reasons. First, her contention that she does not

---

[7] DFS, as parent corporation of Discover Bank, is entitled to enforce the arbitration provision based on the provision entitled "Other Beneficiaries of this Provision" contained in the Cardmember Agreement.

recall receiving the Notice of Rejection of Arbitration is unattested, as it is set forth in her memorandum of law and not in an affidavit, and therefore, is legally insufficient. Fed. R. Civ. P. 56(c)(1). Second, even if Plaintiff had provided such statement in an affidavit, merely asserting that she did not recall receiving the Notice does not lead to the conclusion that she never actually agreed to not opt out of the arbitration clause. *See, e.g., Tinder v. Pinkerton Security,* 305 F.3d 728, 735-36 (7th Cir. 2002) (holding that plaintiff's averment in her affidavit that she did not recall seeing or reviewing the arbitration program brochure that was allegedly included with her payroll check did not raise a genuine issue of fact as to whether the brochure was distributed to her, where the record also contained uncontroverted affidavits from defendant indicating that the brochure was definitely sent and presumably received with her paycheck) (citations omitted); *Fisher v. GE Med. Sys.,* 276 F.Supp. 2d 891, 895 (M.D. Tenn. 2003) ("That [plaintiff] 'does not recall' receiving a copy of [the arbitration agreement] does not invalidate the agreement.").

As to the second threshold requirement, DFS maintains that Plaintiff's antitrust claims against DFS fall within the scope of the arbitration agreement, given the broad and sweeping language of the arbitration provision and the strong presumption of arbitrability. In support, DFS argues that its alleged violations of the Sherman Act clearly relate to Plaintiff's Account and "the relationships which resulted from [her] Account," as that claim is premised on her allegation that DFS used its relationships with credit reporting bureaus and credit scoring companies to share her financial information with the other defendants, thereby supposedly fixing the price that she paid for her credit from DFS and the other defendants. (DFS's Mem. of Law at 10, ECF No. 28 (citing Compl. ¶67).) DFS further contends that the privacy provision of the Cardmember Agreement specifically contemplates and expressly permits the sharing of Plaintiff's account information with others. Therefore, DFS maintains that Plaintiff's claims relate directly to her

account and Cardmember Agreement, and thus, are subject to the agreement to arbitrate with Discover Bank and its parent corporation, DFS. Plaintiff does not appear to contest that her antitrust claims here fall within the scope of the arbitration provision in her Cardholder Agreement.

The Court finds that Plaintiff's antitrust claims against DFS clearly fall within the scope of the arbitration provision. A "presumption of arbitrability" guides the Court's inquiry as to whether Plaintiff's claims fall within the substantive scope of the arbitration provision in her Cardholder Agreement. *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)(overruled by implication on other grounds by *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 85 (2002), as recognized by *Dean Witter Reynolds, Inc. v. Druz,* 2003 U.S. App. LEXIS 15523 (3d Cir. Aug. 4, 2003)) (citing *AT & T Techs. v. Commc'n Workers of Am.,* 475 U.S. 643, 650 (1986)). In addition, "[a]n order to arbitrate 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.,* 247 F.3d 44, 55 (3d Cir. 2001) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)). Courts have determined that language of an arbitration provision providing that "any controversy, claim or dispute arising out of or relating" is of the broadest nature. *TGM Health, Inc. v. UnitedHealth Group, Inc.,* Civ. A. No. 07-115, 2007 WL 1258133, at *1 (E.D. Pa. Apr. 27, 2007) (citing *Medtronic AVE, Inc. v. Cordis Corp.*, 100 F. App'x 865, 868-69 (3d Cir. 2004)). In the case at bar, the Court finds that the arbitration provision at issue here is broadly worded so as to encompass the antitrust claims asserted by Plaintiff, as said claims arise out of or relate to matters covered in the Cardholder Agreement.

Accordingly, the Court finds that the undisputed facts show: (1) the parties entered into a valid arbitration agreement, and (2) Plaintiff's antitrust claims against DFS fall within the scope of that agreement. As to whether the arbitration provision is actually enforceable, Plaintiff raises several defenses at law to the enforceability of contracts, which are addressed below.

### 2. Enforceability of Arbitration Provision

Plaintiff's primary focus in opposing the motion to compel arbitration lies in two defenses at law to the enforceability of contracts—impossibility and unconsionability. For support, Plaintiff cites the Restatement (Second) of Contracts, §261, which provides: "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary."

### a. Impossibility of Performance

### Selection of Forum

First, Plaintiff submits that the arbitration provision is void as being impossible to perform according to its terms, because neither of the forums specifically designated in the arbitration clause no longer accept consumer debt arbitrations. According to Plaintiff, the *New York Times* reported that as of July 20, 2009, the National Arbitration Forum ("NAF") is not accepting consumer arbitration cases in accordance with its settlement agreement with the Minnesota Attorney General.[8] In addition, NAF's website indicates that it is currently not accepting consumer arbitrations.[9] DFS concedes this point.

---

[8] *See* Associated Press, *NY Times*, "Firm Agrees to End Role in Arbitrating Card Debt," July 20, 2009, as reported at http://www.nytimes.com/2009/07/20/business/20credit.html.
[9] *See* http://www.adrforum.com/faq.aspx?faq=884 (last visited 8/24/11).

Plaintiff further submits that the American Arbitration Association ("AAA") similarly has stopped accepting consumer credit card debt arbitrations and adjudications of class action waivers. The AAA recently issued the following notice regarding its previous moratorium on debt collection arbitrations:

> Notice on Consumer Debt Collection Arbitrations
>
> On October 19, 2010, the National Task Force on the Arbitration of Consumer Debt Collection Disputes released the Consumer Debt Collection Due Process Protocol Statement of Principles. That Protocol sets forth a number of important principles that need to be addressed and incorporated into consumer debt collection arbitration programs to help ensure that a fair and adequate arbitration process is made available to the parties. . . .
>
> However, the American Arbitration Association's previously announced moratorium on debt collection arbitrations remains in effect. That moratorium was instituted based on public discourse and an evaluation of the AAA's own experiences. Matters included in this moratorium are: consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute and the case involves a credit card bill or, the case involves a telecom bill or the case involves a consumer finance matter.
>
> The AAA will continue to administer all demands for arbitration filed by consumers against businesses, and all other types of consumer arbitrations.

*See* http://www.adr.org/sp.asp?id=36427 (last visited 8/2411) (hereinafter referred to as "AAA Notice").

Black construes the language in the second paragraph of the AAA Notice following "Matters included in this moratorium are:" in the disjunctive, and thus, argues that the terms "telecom bills" and "consumer finance matters" are clearly separate from the prior limitation regarding who is the filing party. Therefore, according to Black, consumer finance matters (which is really what her case involves, not debt collection) are included within the moratorium.

Based on the above, Plaintiff argues that neither forum designated in the arbitration provision, AAA nor NAF, will arbitrate disputes involving consumer debts similar to the one at issue here. Consequently, because an agreement to arbitrate before a particular forum is an integral term of an agreement to arbitrate, where the forum selected by the parties declines to hear the matter, the dispute is to be tried in court. Accordingly, plaintiff submits that the motion to compel arbitration should be denied.

The Court disagrees with Plaintiff's construction of the language in the last sentence of the second paragraph in the AAA Notice, as she ignores the use of the conjunctive, "and," as well as the grammatical structure of that sentence. As to the use of the conjunctive, unless the context dictates otherwise, the word "and" is presumed to be used in its ordinary sense. *Reese Brothers, Inc. v. United States,* 447 F.3d 229, 235-36 (3d Cir. 2006) (citations omitted). When the ordinary meaning of the word "and" is applied to the last sentence of paragraph two, the AAA Notice sets forth three situations to which the moratorium applies: (1) "consumer debt collection programs[,]" (2) "bulk filings[,] ***and*** [(3)] "individual case filings in ***which*** the company is the filing party ***and*** the consumer has not agreed to arbitrate at the time of the dispute ***and*** [(a)] the case involves a credit card bill, or [(b)] the case involves a telecom bill, or [(c)] the case involves a consumer finance matter. (Emphasis added.) The grammatical structure of the sentence supports this conclusion. The words, "and the consumer has not agreed to arbitrate at the time of the dispute," and "the case involves a credit card bill or . . . a telecom bill or . . . a consumer finance matter," are actually clauses (i.e., contain a noun and a verb), as opposed to the matters set forth at the beginning—"consumer debt collection programs" and "bulk filings"—which are nouns. Moreover, the use of the relative pronoun, "which" in the preceding clause, "individual case filings in *which* the company is the filing party," indicates that the clauses that

follow it are subordinate to it. Indeed, the very definition of a subordinate clause is that it depends on something else, i.e., an independent clause, for its meaning. Finally, the Court notes that the last subordinate clause which begins "and the *case* involves a credit card bill . . ." actually includes the word "case," which appears to be referring to the "individual *case* filings" language in the independent clause, "Matters included in this moratorium are . . . individual *case* filings in which the company is the filing party and . . .." (Emphasis added.)

In addition, this construction is in line with AAA's concerns, in implementing the moratorium, with ensuring a fair and adequate arbitration process for *consumer debt collection* arbitration programs. The Court's construction of the moratorium is also logical given the AAA's repeated reference to *debt collection* arbitrations throughout the Notice, and the fact that debt collections are normally brought by the company/lender against the consumer. None of these concerns are implicated here, where Plaintiff's dispute with DFS does not involve a consumer debt collection arbitration.[10] At least two other district courts have agreed with this Court that AAA is available to arbitrate similar claims. *See, e.g., Clerk v. ACE Cash Express, Inc.,* No. 09-05117, 2010 WL 364450, at *10 (E.D.Pa. Jan. 29, 2010); *Smith v. Computertraining.com, Inc.,* No. 2:10-cv-11490, 2011 U.S. Dist. LEXIS 16516, at *30-31 (S.D. Mich. Feb. 18, 2011).

In light of this construction of the AAA Notice, the Court finds that none of the situations subject to the AAA moratorium is present here. The first situation is not implicated because, as Plaintiff concedes, the dispute here involves "a consumer finance matter (price fixing), not a debt collection program." Pl.'s Sur-Reply Br. at 1, ECF No. 73. Nor does this case involve a "bulk filing, and thus, the second situation is likewise inapplicable. As to the third situation, all three

---

[10] Nor does applying the ordinary meaning of the word "and" here lead to an absurd or anomalous result, but rather, is entirely consistent with the purpose of the moratorium.

conditions must be met in order for the matter to fall within the moratorium. The only condition at issue here is the first one—whether DFS is the filing party. Black argues that DFS is the filing party because DFS is the partying requesting arbitration. The Court disagrees. Just because DFS has moved to compel arbitration does not mean that it is the filing party. Rather, the filing party is the party pursuing the underlying claim which, in this case, is Black. *See Ace Cash Express,* 2010 WL 364450, at *10; *Estep v. World Finance Corp. of Ill.,* 735 F.Supp. 2d 1028, 1033 (C.D.Ill. 2010); *Jackson v. The Payday Loan Store of Ill.,* 2010 U.S. Dist. LEXIS 25266, at *6-7 (N.D. Ill. Mar. 17, 2010).

Plaintiff attempts to distinguish these cases on the basis that the district courts in *Estep* and *Jackson* failed to analyze the moratorium in light of AAA's substantive concerns as stated in the Naimark Testimony. However, the moratorium's concerns were specifically directed to consumer debt collection arbitrations brought by lenders, and thus, would have no relevance to the decisions in *Estep* and *Jackson,* or to the instant matter.

Moreover, the third paragraph of the AAA Notice makes clear that the moratorium does not apply to Plaintiff's dispute with DFS. Black does not agree with this conclusion, again asserting that she is not the party demanding arbitration. This argument fails for the reason just stated—Plaintiff, who is pursuing an antitrust claim against DFS, would be the filing party in the arbitration. Thus, the third paragraph of the AAA Notice makes clear that Plaintiff's claim is not subject to the current AAA moratorium on debt collection arbitrations.

Finally, in a last ditch effort to show that arbitration before the AAA is impossible, Plaintiff posits that when the substantive concerns underlying the moratorium are taken into consideration,[11] AAA will not administer the arbitration. According to Black, AAA's

---

[11] As Black notes, one of the critical issues needing further consideration and improvement before arbitration of debt collection cases will resume is arbitrator neutrality, specifically, that "an appearance of bias might result from

substantive concern of bias has nothing to do with which party files in arbitration. Plaintiff's argument might have some merit if her dispute with DFS involved the arbitration of a debt collection matter and she was the one being sued. But, as she herself concedes, her dispute with DFS involves a consumer finance matter (price fixing), and she is the filing party.

In the alternative, Black requests leave of court under Rule 26(d)(1) to conduct discovery limited to determining whether the present dispute with Discover falls within AAA's moratorium. As the Court has determined that the moratorium does not apply to Plaintiff's dispute with DFS, and even Plaintiff's own evidence, Naimark's testimony, supports this conclusion, there is no need to conduct discovery to ascertain whether AAA would arbitrate the matter. That issue has clearly been resolved.

Accordingly, because the AAA moratorium does not apply to Plaintiff's dispute with DFS, enforcement of the arbitration provision is not impossible under the terms of the Cardholder Agreement.

### Class Action Waiver

Plaintiff's other impossibility argument can be summarized as follows—because the arbitration provision in her Cardholder Agreement contains a class action waiver, and AAA does

---

arbitrators hearing many cases involving the same business party." Testimony of Richard W. Naimark on behalf of AAA, Before Domestic Policy Subcommittee, Oversight and Government Reform Committee, July 22, 2009 ("Naimark Testimony") at 6, reported at http://www.adr.org/si.asp?id=5770 (last visited 8/24/2011) (ECF No 73-1). However, a review of Mr. Naimark's testimony reveals that the AAA's overarching concern is with the fairness of *debt collection* arbitrations. In this regard, Naimark testified:

> [I]t is the AAA's position that a series of important fairness and due process concerns must be addressed and resolved before we will proceed with the administration of any future *debt collection arbitrations.* Until such time, the AAA has placed a moratorium on the administration of any *consumer debt collection arbitration programs.*

*Id.* at 2 (emphasis added). Thus, the critical issues identified by AAA—notice (many consumers do not appear), arbitrator neutrality, pleading and evidentiary standards, and defenses and counterclaims—are particular to the consumer debt collection arbitrations, and were identified based on the large number of cases filed by creditors, and statistical evidence showing that 93.3% of the time defendants (consumers) did not appear, defendants are almost never represented by counsel, and that 80% of cases result in default judgments against the consumer without the requisite proof. *Id.* at 4 (citing *Debt Weight: The Consumer Credit Crisis in new York City and its Impact on the Working Poor,* available at http://www.urbanjustice.org/pdf/publications/CDP_Debt_Weight.pdf. ). None of these concerns is implicated in the case at bar.

not accept adjudications of class action waivers, the arbitration provision is void as being impossible to perform according to its terms. In support, Black cites a document located on the AAA's website entitled, "Consumer Debt Collection Due Process Protocol Statement of Principles" ("Principles") prepared by the National Task Force on the Arbitration of Consumer Debt Collection Disputes, dated October 2010, from which she infers that AAA has stopped accepting adjudications of class action waivers,. (*See* Ex. B attached to DFS's Reply Br., ECF No. 70.)

In reply, Discover argues that Black is completely wrong when she claims the AAA does not accept adjudications of class action waivers. DFS submits that the document she cites in support, the Principles, does not contain any such statement. More importantly, DFS posits, it is asking *this Court*, not AAA, to enforce the class action waiver. The arbitration agreement specifically provides that "only a court, and not an arbitrator, shall determine the validity and effect of the Class Action Waiver." (Cardmember Agreement at 11, Ex. 10 to Linian Decl.)

The Court does not find any support for Black's position in the Principles document. Rather, review of the Principles reveals that the members of the Task Force took strong but opposing views on the availability of class actions in arbitration, and therefore the Principles declined to take a position on the issue of class actions. *See* Ex. B at 11-14, ECF No. 70.[12] In any event, Plaintiff's argument is undercut by the court of appeals decision in *Puleo v. Chase Bank USA, N.A.,* 605 F.3d 172 (3d Cir. 2010). In *Puleo,* the court of appeals, sitting *en banc*, held that a plaintiff's challenge to an arbitration agreement's class action waiver "presents a question of arbitrability" that the court, not the arbitrator, should decide. *Id.* at 188. Therefore.

---

[12] Although neither party brought this to the Court's attention, the court of appeals in *Puleo* noted that the plaintiffs could not have brought that case as a class arbitration before the AAA because in a July 2005 policy, the AAA stated that it "does not accept demands for class arbitration where, as "in that case", 'the underlying agreement prohibits class claims,' unless the parties obtain a court order requiring the parties to submit the class claims to arbitration." 605 F.3d at 176 n. 1.

even if AAA is no longer accepting adjudications of class action waivers, that does not make the arbitration provision impossible to perform, since the Court, not the arbitrator, determines whether the class action waiver is enforceable.

**b.**      *Unconscionability of Class Action Waiver*

DFS submits that the class action waiver in the arbitration provision is valid and enforceable because Plaintiff agreed to the arbitration provision and she did not exercise her right to opt out of the class action waiver.   In particular, DFS submits that under Delaware law, the parties' designated choice of law, the class action waiver is enforceable.   In response, Plaintiff argues that because Pennsylvania policy interests are implicated here, Pennsylvania law should be applied, and under that law, the class action waiver is unconscionable, and therefore, unenforceable.   DFS disagrees that Pennsylvania law should apply here, but submits that even if the Court were to apply Pennsylvania law, Plaintiff has failed to show, as is her burden, that the class action waiver is both procedurally and substantively unconscionable.   DFS further submits that pursuant to the Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740 (2011), the FAA preempts Pennsylvania law that holds class action waivers in consumer arbitration agreements unconscionable, and thus, unenforceable.   For the reasons articulated below, the Court finds the class action waiver is enforceable.

As a preliminary matter, DFS submits that Black does not dispute, nor could she, that if this Court applies the Delaware choice-of-law provision in the Cardmember Agreement, the class action waiver is enforceable.   In support, DFS cites *Venezie v. MBNA Am. Bank,* No. 05-1458, 2006 U.S. Dist. LEXIS 54014 (W.D.Pa. July 26, 2006) (Cercone, J.) (upholding Delaware choice-of-law provision in credit card agreement and enforcing class action waiver in a diversity jurisdiction case brought pursuant to TILA); *Lloyd v. MBNA Am. Bank, N.A.,* 27 F. App'x 82, 85

(3d Cir. 2002) (finding right to bring class action under TILA was a procedural one and may be waived, and thus, arbitration agreement barring class-wide relief for TILA claims was not unconscionable); *Pick v. Discover Fin. Serv., Inc.,* C.A. No. 00-935-SLR, 2001 WL 1180278, *5 (D.Del. Sept. 28, 2001) ("it is generally accepted that arbitration clauses are not unconscionable because they preclude class actions"). In addition, DFS submits that the court of appeals for this circuit has repeatedly enforced class action waivers in arbitration agreements. *See e.g., Gay v. CreditInform,* 511 F.3d 369, 391-92 (3d Cir. 2007) (because plaintiff retained her substantive rights pursuant to the Credit Repair Organizations Act and Pennsylvania Credit Services Act, a provision in the arbitration agreement requiring plaintiff to arbitrate claims on an individual basis did not constitute an unconscionable bargain under Virginia law); *Johnson v. West Suburban Bank,* 225 F.3d 366, 371, 373-75 (3d Cir. 2000) (under federal Truth-in-Lending Act, right to class action was a procedural one and may be waived, and thus, arbitration agreement barring class-wide relief for TILA claims was not unconscionable, reasoning that plaintiffs who signed valid arbitration agreements retained the full range of rights afforded under TILA in individual arbitration proceedings).

A review of Delaware law reveals that the courts of that state have held class action waivers in consumer credit card agreements to be enforceable. *See, e.g., Edelist v. MBNA Am. Bank,* 790 A.2d 1249, 1260-61 (Del. Super. Ct. 2001) (holding that where the surrender of the class action right was clearly articulated in the arbitration agreement, and plaintiff did not dispute the clarity of the language barring class actions in arbitration, the class action waiver was not unconscionable and therefore enforceable);[13] *Pick,* 2001 WL 1180278, at *5 ("it is generally

---

[13] In concluding that the class action waiver was not unconscionable, the *Edelist* court relied on several decisions by Delaware district courts involving unconscionability challenges to class action waivers in TILA cases. 790 A.2d at 1261. Although Edelist asserted state common law claims and an alleged violation of the Delaware Consumer Fraud Act, the superior court found the result in those TILA cases,

accepted that arbitration clauses are not unconscionable because they preclude class actions")
(citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32 (1991) (ADEA claims); *West Suburban Bank*, 225 F.3d at 377 (FILA claims)). Under Delaware law, more than a mere disparity in bargaining power is required to demonstrate that an arbitration provision is unconscionable. *Pick,* 2001 WL 1180278, at *5 (citing *Gilmer*, 500 U.S. at 33; *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 182-83 (3d Cir. 1999)). In setting forth the test for unconscionability, the Delaware Supreme Court opines:

> there must be an absence of meaningful choice and contract terms
> unreasonably favorable to one of the parties. Superior bargaining
> power alone without the element of unreasonableness does not
> permit a finding of unconscionability or unfairness. The traditional
> test is this: a contract is unconscionable if it is "such as no man in
> his senses and not under delusion would make on the one hand,
> and as no honest or fair man would accept, on the other." *Williams
> v. Walker-Thomas Furniture Co*., 121 U.S.App.D.C. 315, 320, 350
> F.2d 445, 450, 18 A.L.R.3d 1297, 1301-3 (1965). "It is generally
> held that the unconscionability test involves the question of
> whether the provision amounts to the taking of an unfair advantage
> by one party over the other." *J. A. Jones Construction Co. v. City
> of Dover*, Del.Super., 372 A.2d 540, 552 (1977), *appeal dismissed*,
> Del.Supr., 377 A.2d 1 (1977).

*Tulowitzki v. Atlantic Richfield Co.,* 396 A.2d 956, 960 (Del. 1978).

In her written briefs, Black has not provided any argument in opposition to DFS's argument that under Delaware law, the class action waiver is not unconscionable. Indeed, at oral argument, Plaintiff's counsel agreed with DFS that under Delaware law, class action waivers in arbitration provisions are enforceable. (Tr. of Oral Arg. at 80, ECF No. 82.) In light of the Delaware courts' endorsement of the generally accepted view that arbitration clauses are not unconscionable because they preclude class actions, and the absence of any evidence showing

---

i.e., the district court upheld the bar on class actions in arbitration agreements, was equally applicable to plaintiff's putative right under Delaware law to bring a class action. *Id.*

DFS had superior bargaining power over Plaintiff that was unreasonable,[14] the Court concludes that Delaware Supreme Court would find that the class action waiver in the arbitration provision agreed to by Plaintiff is enforceable.

Perhaps recognizing this, Plaintiff attempts to circumvent the designation of Delaware law in the Cardmember Agreement by arguing that where a class action waiver is unconscionable as against public policy, the policy interests of Pennsylvania override any choice of law clause. Plaintiff's argument parallels, at least partially, a conflict of laws analysis under Pennsylvania law, but is undeveloped. *See* discussion *infra* at 23. The Court notes that neither party has advanced any argument as to which state's choice of laws rules should be applied here. The general rule in diversity of citizenship cases is that the conflicts law of the forum applies. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). However, whether this rule applies to federal question case such as this one, where Plaintiff's claims against DFS are brought pursuant to a federal statute, but the issue raised in the motion to compel arbitration involves a state law contract defense, depends on the source of the source of the right or issue being adjudicated. *See* Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 19 *Fed. Prac. & Proc.* §4520 at 638 (2d ed. 1996) ("Once it is understood that the law to be applied in federal courts is not chosen by reference to the basis of subject-matter jurisdiction, the nature of the inquiry by which it is decided which law to apply in nondiversity cases is the same as that governing the choice in diversity cases. In other words, the choice of applicable law turns upon the source of the right or issue being adjudicated.") (footnote omitted).

The court of appeals decision in *System Operations, Inc. v. Scientific Games Dev. Corp.,* 555 F.2d 1131 (3d Cir. 1977) is instructive here. In that case, the plaintiff brought a federal antitrust claim involving patents in a New Jersey federal court, as well as various common law

---

[14] *See* discussion of this factor *infra* at 29-33 regarding Pennsylvania law on unconscionability.

claims under New Jersey law. *Id.* at 1135. As a threshold matter, the court of appeals addressed a choice of law issue with regard to one of the pendant state law claims. The court held that although *Klaxon* was a diversity jurisdiction case, the principle of *Klaxon* was equally applicable with regard to pendant jurisdiction claims. *Id.* at 1136 (citations omitted). Thus, the court of appeals concluded that since plaintiff's common law product disparagement claim was predicated on state, not federal law, the determination of which state's rules of product disparagement law should have been governed by the choice-of-law rules of the forum state, New Jersey. *Id.* at 1136-37 (citation omitted).

Similarly here, this Court's subject matter jurisdiction is predicated on a federal statute—the Sherman Act. Moreover, the FAA governs the interpretation and construction of the arbitration agreement. Section 2 of the FAA has been interpreted as endorsing the applicable state law where a party raises contract defenses, such as unconscionability, to invalidate arbitration agreements. *Gay,* 511 F.3d at 388 (citing *Harris,* 183 F.3d at 179; *Doctor's Assocs.,* 517 U.S. at 687) (other citations omitted). That is precisely what has happened here—Plaintiff has raised an unconscionability defense under Pennsylvania law to the enforcement of the class action waiver in the arbitration provision. Therefore, the Court finds that it is entirely reasonable to apply the choice of law rules of the forum state, Pennsylvania, to determine whether the parties' designation of Delaware law as the governing law should be applied to Plaintiff's unconscionability argument. *See Gay,* 511 F.3d at 389 (applying Pennsylvania choice of law rules in a federal question case to determine which state's law governed an arbitration provision based on plaintiff's argument that Pennsylvania law governed the arbitration clause and the contract as a whole, and the court of appeals' observation that had jurisdiction been based on diversity of citizenship, Pennsylvania's choice of law rules would apply under *Klaxon*).

In Pennsylvania, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.,* 40 F.3d 52, 55 (3d Cir. 1994). In making this determination, the Pennsylvania courts have adopted the approach taken in the Restatement (Second) of Conflicts §187, which provides in relevant part:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . ..

*Kruzitz,* 40 F.3d at 55 (citing *Smith v. Commw. Nat'l Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989), *appeal denied*, 569 A.2d 1369 (1990)); *Gay,* 511 F.3d at 389. In the case at bar, Plaintiff's unconsionability defense to the enforceability of the class action waiver cannot be resolved by the terms of the Cardmember Agreement, including the arbitration provision. Thus, §187(1) does not apply. Turning to §187(2), it appears that Delaware has a substantial relationship to the parties, as Discover Bank is chartered and incorporated in Delaware, has its principal place of business in Delaware, and operates a full service facility in that state. Moreover, both DFS and DFS Services, LLC are incorporated in Delaware. Thus, the parties'

designation of Delaware law will be upheld unless Plaintiff can demonstrate that the application

of Delaware law would be contrary to a fundamental policy of Pennsylvania, and Pennsylvania

has a materially greater interest than Delaware in the determination of whether the class action

waiver is unconscionable.  *Kruvitz,* 40 F.3d at 56 ("Pennsylvania courts will only ignore a

contractual choice of law provision if that provision conflicts with strong public policy

interests.")

In arguing against the use of the Delaware choice of law provision in the Cardmember

Agreement, Plaintiff does not articulate the fundamental policy of Pennsylvania implicated here,

other than making the conclusory statement that class action waivers are unconscionable, an

therefore, violate Pennsylvania public policy.[15]  Thus, she completely fails to engage in a

comparison of the two state's public interests at issue here.  Instead, Black simply posits that

where a class action waiver is unconscionable as against public policy, the policy interests of

Pennsylvania override any choice of law clause.  In support of her argument, Plaintiff cites *Lytle*

*v. CitiFinancial Serv., Inc.,* 810 A.2d 643 (Pa. Super. Ct. 2002),[16] and *Kaneff v. Delaware Title*

*Loans, Inc.,* 587 F.3d 616 (3d Cir. 2009).  Plaintiff fails to explain how either case supports a

finding *in this case* that Pennsylvania has a fundamental policy interest that is materially greater

than Delaware, or even articulate what that policy interest is.  In fact, neither of these cases

---

[15] At oral argument, Plaintiff's counsel described the public policy of Pennsylvania that is implicated here
as "we want to protect Pennsylvania residents and allow them to have full remedies against companies
that self-create these waivers in their arbitration clause."  Tr. of Oral Arg. at 82.  No further elaboration
was provided as to how this so-called policy has been violated here or conflicts with Delaware law.
[16] The superior court's decision in *Lytle* was subsequently abrogated by *Salley v. Option One Mortgage
Corp.,* 925 A.2d 115 (Pa. 2007), on the issue of whether a financial institution's reservation of access to
the courts for itself to the exclusion of the consumer, in an arbitration clause, creates a presumption of
unconscionability. The Pennsylvania Supreme Court in *Salley* concluded that while "*Lytle* was well
intentioned in its effort to guard against pernicious lending practices, . . . it swept too broadly. Under
Pennsylvania law, the burden of establishing unconscionability lies with the party seeking to invalidate a
contract, including an arbitration agreement, and there is no presumption of unconscionability associated
with an arbitration agreement merely on the basis that the agreement reserves judicial remedies associated
with foreclosure." *Id.* at 129.

support the application of Pennsylvania law under §187(2)(b) of the Restatement (Second) of Conflicts.

For example, in *Lytle,* the arbitration clause in the mortgage loan agreement provided that the applicable law was that of the state where the borrowers' real property was located which, in that case, was Pennsylvania. Thus, the superior court was not faced with a choice of law analysis *based on an implicated public policy concern*. Plaintiff's reliance on *Lytle* is even more perplexing given that the superior court did not find the class action waiver to be unconscionable. 810 A.2d at 666. In so holding, the superior court found instructive the court of appeals decision in *West Suburban Bank,* 225 F.3d at 374, which rejected an identical challenge to the validity of an arbitration clause contained in a consumer loan contract which contained a class action waiver. *Lytle,* 810 A.2d at 666. In the case before it, the *Lytle* court found that the record was devoid of any evidence that would establish that the damages claimed by the plaintiffs were insufficient to allow them to seek legal redress for their injuries in the absence of a class action. *Id.* Without such evidence, the superior court held that plaintiffs' challenge to the class action waiver as violating public policy failed. *Id.*

In *Kaneff,* the court of appeals applied Pennsylvania's choice of law rules to determine whether Pennsylvania law, instead of the Delaware choice-of-law provision in a consumer loan agreement, should be applied to determine whether an arbitration clause, which included a class action waiver,[17] was unconscionable. 587 F.3d at 624. The court of appeals concluded that Pennsylvania had a materially greater interest than Delaware in the determination of whether the arbitration clause is unconscionable because Pennsylvania's interest in the dispute, particularly its antipathy to high interest rates such as the 300.01 percent interest charged in the contract at

---

[17] Without any discussion, the court of appeals in *Kaneff* found the class action waiver provision was not unconscionable. 587 F.3d at 624.

issue, implicated a fundamental policy, as opposed to Delaware, which has no usury law. *Id.* Ultimately, the *Kaneff* court concluded that the arbitration agreement would not be considered unconscionable under Pennsylvania law. *Id.* By contrast here, the fundamental policy at issue is not the disfavor of usurious interest rates. Because the application of the Restatement test is fact specific, and *Kaneff* differs factually in this important respect, *Kaneff* does not provide support for Plaintiff's argument that the Pennsylvania policy interest implicated here overrides any choice of law clause.

In addition to *Lytle* and *Kaneff,* Plaintiff relies on a line of cases decided by the court of appeals for this circuit, which she cites for the proposition that the policy interest of the forum can preclude application of arbitration where the class action waiver is found to be unconscionable. *See e.g., Gay,* 511 F.3d at 394-95; *Homa v. Am. Express Co,* 558 F.3d 225 (3d Cir. 2009), abrogation recognized by *Litman v. Cellco P'ship,* No.08-4103, 2011 U.S. App. LEXIS 17649, at *11 (3d Cir. Aug. 24, 2011).[18] In response, DFS questions Plaintiff's reliance on *Gay,* where the court of appeals upheld enforcement of the class action waiver, and on *Homa,* which involved New Jersey law and unlike the agreement here, the arbitration agreement in *Homa* did not give the consumer an opt-out right. The Court finds that Plaintiff's reliance on *Gay* and *Homa* is misplaced as those cases are distinguishable factually from the case at bar, but not for the reasons cited by DFS.

In *Gay,* the court of appeals applied Pennsylvania's conflict rules to determine whether the parties' Virginia choice of law provision should be upheld. In weighing the interests of the two states, the court of appeals opined:

---

[18] Plaintiff also cites the court of appeals' en banc decision in *Puleo,* but only to point out that the en banc court clarified that the panel's discussion in *Gay,* indicating that the FAA preempted Pennsylvania law finding that class action waivers were unconscionable, was dicta, as the panel had already determined that Virginia law governed the arbitration provision. 605 F.3d at 176 (citing *Gay*, 511 F.3d at 390, 395).

> Inasmuch as we see no reason to conclude that Pennsylvania "has a materially greater interest" in the enforceability of the arbitration agreement, or that applying Virginia law to determine whether it should be enforced "would be contrary to a fundamental policy" of Pennsylvania, under Pennsylvania's choice-of-law rules we are satisfied that there is no reason not to honor the parties' choice of Virginia law in considering the unconscionability claim. Though it certainly is true that Pennsylvania has an interest in protecting its consumers, we cannot say that Virginia has a lesser interest in protecting businesses located in it.

511 F.3d at 390. Unlike *Gay,* the fundamental public policy at issue here is the availability of class actions in arbitrations. Thus, the court of appeals decision in *Gay* provides no guidance to this Court on how to evaluate the competing public policy interests of Delaware and Pennsylvania for the purpose of determining which state's law should apply to the issue of whether the class action waiver is unconscionable.

In conducting a choice-of-law analysis in *Homa,*[19] the court of appeals actually considered the competing policy interests of the designated state's law, Utah, and the law of the forum, New Jersey, vis a vis class action waivers in arbitration agreements. The court of appeals concluded that the waiver of class action arbitrations violated fundamental New Jersey public policy as applied to small sum cases. 558 F.3d at 230. In determining which state, NJ or Utah, had the greater interest, the court of appeals first determined that an actual conflict existed between the laws of those states, as Utah statutory law explicitly provided that class action waivers in open-end consumer credit contracts were valid, while NJ decisional law had declared unconscionable a class action arbitration waiver that would preclude relief under NJ's consumer fraud act. *Id.* at 232. After weighing the public interests at stake—Utah's law indicating a

---

[19] In *Homa,* the holder of an American Express credit card brought a putative class action in New Jersey District Court claiming that the card issuer and its parent company misrepresented the actual terms of a reward program and failed to reward him the promised amount of cash back, in violation of the New Jersey Consumer Fraud Act. 558 F.3d at 226-27.

strong policy in favor of the enforcement of class action waivers, as opposed to New Jersey's interest in protecting consumers' ability to effectively pursue their statutory rights under its consumer protection laws—the court of appeals concluded that New Jersey had a materially greater interest than Utah in the enforceability of a class action arbitration waiver that could operate to preclude a New Jersey consumer from relief under its consumer fraud act. *Id.* at 232-33. Clearly, *Homa* is distinguishable because, although the public interests involved were class action waivers in arbitration agreements, the public interests were weighed under New Jersey and Utah law, not Pennsylvania and Delaware law. More importantly, the continued viability of the conflicts analysis in *Homa* is questionable in light of the court of appeals holding in *Litman* that "*Homa* has been abrogated by *Concepcion* and that *Muhammad*[, New Jersey decisional law that had declared unconscionable a class action arbitration waiver that would preclude relief under NJ's consumer fraud act,] is preempted by the FAA." 2011 U.S. App. LEXIS 17649, at *11.

While Plaintiff contends that the policy interests of Pennsylvania override any choice of law clause where the class action waiver is unconscionable and therefore against public policy,[20] she has failed to articulate any argument or facts to support her contention. As the party challenging the application of Delaware choice-of-law, Plaintiff bears the burden to demonstrate that the Delaware choice of law provision should not be upheld. Because she has failed to meet her burden, the Court finds the Delaware choice of law provision should be applied to the issue presented here. "Under *Volt,* when an arbitration agreement contains a choice-of-law provision, that provision must be honored, and a court interpreting the agreement must follow the law of the

---

[20] The Court notes that Plaintiff appears to be putting the proverbial cart before the horse with this argument, as her argument appears to be that because the class action waiver violates public policy, it is unconscionable. However, the determination of whether the class action waiver is unconscionable is not made at this stage, but only after the conflicts of law analysis has been completed.

jurisdiction selected by the parties." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 87 (2002) (Thomas, J., concurring in judgment) (citing *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478-79 (1989)). As the Supreme Court opined in *Volt,* the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." 489 U.S. at 478 (citation omitted). Thus, the Supreme Court held that "where parties agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." *Id.* at 479. In the case at bar, the Cardholder Agreement, which contains the arbitration provision at issue here, provides that the Agreement shall be governed by Delaware law and applicable federal laws. Plaintiff has failed to proffer any facts or argument calling into question her agreement to the choice-of-law provision in the Cardholder Agreement. Thus, pursuant to *Volt,* the Court is required to follow the law of the jurisdiction selected by the parties, i.e., Delaware, and under that law, the class action waiver is enforceable.

In the alternative, DFS argues that even if this Court were to find that Pennsylvania law governs the determination as to whether the class action waiver is unconscionable, the class action waiver would still be enforceable. The doctrine of unconscionability in Pennsylvania has been explained by the Pennsylvania Supreme Court as follows:

> [W]e agree with the general formulation which has been applied fairly consistently in the intermediate appellate courts, and which borrows from the statutory version and is largely consonant with the Second Restatement of Contracts. See Restatement (Second) of Contracts § 208 (1981).
>
> Under that formulation, a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. *See Denlinger, Inc.* [*v. Dendler,* 415 Pa. Super. 164, 177, 608 A.2d 1061, 1068 (1992)] (citing *Witmer v. Exxon Corp.,* 495 Pa. 540, 551, 434 A.2d 1222,

> 1228 (1981)). The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. See generally 17A Am.Jur.2d Contracts § 278 (2006). The burden of proof concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts. *See Bishop v. Washington,* 331 Pa.Super. 387, 400, 480 A.2d 1088, 1094 (1984); *accord* 13 Pa.C.S. § 2302.

*Sallie,* 925 A.2d at 119-20 (footnote omitted). DFS submits that Plaintiff has failed to demonstrate the presence of either type of unconscionability with regard to the class action waiver.

"Procedural unconscionability refers specifically to 'the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language.'" *Zimmer v. CooperNeff Advisors, Inc.,* 523 F.3d 224, 228 (3d Cir. 2008) (citing *Harris,* 183 F.3d at 181). As the Pennsylvania Supreme Court has explained, procedural unconscionability means the "absence of meaningful choice on the part of one of the parties." *Witmer v. Exxon Corp.,* 434 A.2d 1222, 1228 (Pa. 1981). Procedural unconscionability exists generally where the agreement involved is a contract of adhesion, that is, the contract is "prepared by a party with excessive bargaining power and presented to the other party on a 'take-it-or-leave-it' basis." *Hopkins,* 643 F.Supp. 2d at 716-17 (citing *Denlinger, Inc. v. Dendler,* 608 A.2d 1061, 1068 (Pa. Super. Ct. 1992)). "The general test is whether the party challenging the agreement had any meaningful choice regarding the acceptance of its provisions." *Id.* at 717 (citing *Thibodeau v. Comcast Corp.,* 912 A.2d 874, 886 (Pa. Super. Ct. 2006)).

Plaintiff's argument in support of procedural unconscionability is that although DFS may have made a one-time offer to opt out of arbitration over seven years ago, she does not recall receiving the offer and thus never actually agreed not to opt out. By relying on silence instead of contacting her to discuss the terms, Plaintiff maintains that DFS is simply exercising its superior

strength in bargaining power to control the terms and avoid any meaningful negotiations regarding those terms. In response, DFS submits that Black has failed to show that the arbitration agreement was procedurally unconscionable in that she was afforded the opportunity to opt-out of the arbitration agreement, and her unattested claim that she "does not recall" receiving the opt-out offer is legally insufficient, thus defeating any claim that it was a contract of adhesion. The Court does not find any merit to Plaintiff's argument.

Plaintiff's argument that she was denied any meaningful choice is belied by the uncontested evidence here, which shows that in 2003, Plaintiff was given the explicit right to reject the entire arbitration provision without cancelling her account or affecting any of her other rights or privileges under the remainder of the Cardmember Agreement. (Linian Decl., ¶11 & Ex. 4 attached thereto, ECF No. 28-3). The Notice of Right to Reject Arbitration was included with Plaintiff's monthly billing statement, and indicated that she had the opportunity to reject the Arbitration of Disputes section effective April 1, 2003. (Ex. 4 to Linian Decl.) In order to do so, Plaintiff was required to send a written notice of rejection by March 25, 2003. (*Id.*) Plaintiff allegedly had thirty days to exercise her opt-out right and reject arbitration.[21] According to its records, DFS did not receive any written notice from Plaintiff electing to exercise her right to reject the arbitration provision. (Linian Decl., ¶11.)

On this point, the Court finds instructive the district court's decision in *Fluke v. Cashcall, Inc.,* in which the court opined:

> An opt-out provision . . . seriously undermines a consumer's contention that the arbitration agreement is unconscionable. [Plaintiff] was given the option to say "no" to the arbitration provision and he was given a full 60 days to do so. In that way, he

---

[21]At oral argument, counsel for DFS stated that Plaintiff "had 30 days if she wanted to walk away from arbitration[, and s]he didn't exercise it." Tr. of Oral Arg. at 84-85. Although this statement is not supported by any evidence in the record, it stands unrefuted by Plaintiff.

> had complete control over the terms of the agreement and it cannot be said that the arbitration agreement was presented to him on a take-it-or-leave it basis.

*Fluke v. Cashcall, Inc.,* Civ. A. No. 08-5776, 2009 WL 1437593, at *8 (E.D.Pa. May 21, 2009). The *Fluke* court noted that although the Pennsylvania courts have not yet addressed whether a class action waiver that contains an opt-out clause is unconscionable and unenforceable, the district court predicted that the Pennsylvania Supreme Court would find that such a provision is not unconscionable because such provisions are not unilaterally imposed but instead give the consumer a meaningful choice as to the terms of the agreement. *Id.* at *7-8.

Similarly, the district court in *Clerk v. ACE Cash Express* rejected plaintiff's argument that she had no meaningful choice in accepting the terms of an arbitration provision due to the unequal bargaining power of the parties and her lack of sophistication. 2010 WL 364450, at *8.[22] Relying on *Fluke,* the court in *ACE Cash Express* found the opt-out provision in the arbitration agreement, and plaintiff's failure to exercise it, precluded her argument that the arbitration agreement was presented on a take-it-or-leave-it basis. *Id.* at *8-9. Likewise in the case at bar, Plaintiff was given an opt-out right and she failed to execute it. In these circumstances, the Court cannot conclude that Plaintiff lacked a meaningful choice as to the terms of the Cardholder Agreement.

---

[22] Several other district courts have declined to find arbitration provisions, with an opt-out clause contained in the arbitration provision, to be procedurally unconscionable. *Clerk v. First Bank of Delaware,* 735 F.Supp. 2d 170, 183 (E.D.Pa. 2010) (collecting cases). The district court in *First Bank of Delaware* declined to follow those cases, however, because the facts in the case before it were distinguishable. There the loan agreement contained terms which gave plaintiff the unilateral right to rescind the loan within one business day of execution of the loan agreement, or to reject the arbitration provision by notice postmarked within seven days. *Id.* The court found the one-day rescission option in a payday loan agreement was meaningless to an individual in plaintiff's position—in dire need of cash assistance and an inability to obtain such assistance elsewhere. Because of the short time frame involved in the opt-out clause, the Court found that the opt-out provision did not protect an otherwise adhesive consumer arbitration agreement from a finding of procedural unconscionability. *Id.* at 184. By contrast here, the record is devoid of any evidence showing that Black needed cash/credit card and she had not other options. Instead, the Court finds that Black's case is more similar to *ACE Cash Express* and *Fluke,* and therefore, elects to apply the reasoning in those cases to the case at bar.

Plaintiff also advances the argument that the arbitration provision is procedurally unconscionable because she does not recall receiving the opt-out notice and thus never actually agreed not to opt out. This argument is equally unavailing. As the Court opined above, Plaintiff's contention that she does not recall receiving the Notice is unattested, and thus, insufficient to show lack of notice. In addition, the district court in *ACE Cash Express* rejected a similar argument in which the plaintiff argued that the arbitration agreement was procedurally unconscionable because she did not recall reading or did not actually read the agreement. 2010 WL 364450, at *9. The district court found that the "Pennsylvania Supreme Court has explicitly rejected such reasoning, stating that 'failure to read [a contract] is an unavailing excuse or defense and cannot justify avoidance, modification or nullification of [a] contract or any provision thereof.'" *Id.* (quoting *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 469 A.2d 563, 566 (Pa. 1983)). Black's argument that she *does not recall receiving* the opt-out notice from DFS is somewhat analogous to the plaintiff's argument in *Clerk* that she *did not recall reading* the agreement, and thus, fails for that additional reason. Indeed, a finding of no procedural unconscionability is even more compelling here because the 2003 Notice was sent in a separate document, as opposed to contained within a loan or credit card agreement. Accordingly, the Court finds that Plaintiff has failed to demonstrate that the class action waiver provision is procedurally unconscionable under Pennsylvania law.

DFS further maintains that Plaintiff has failed to show that the class action waiver is substantively unconscionable. Substantive unconscionability requires an inquiry into "whether the arbitration provision 'unreasonably favors the party asserting it.'" *Zimmer,* 523 F.3d at 228 (quoting *Sallie,* 925 A.2d at 119). The courts have delineated several factors that may indicate that an arbitration provision is substantively unconscionable, including:

> severe restrictions on discovery, *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 387-88 (6th Cir.2005); high arbitration costs borne by one party, *Spinetti*, 324 F.3d at 216-17; limitations on remedies, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 670-71 (6th Cir.2003); and curtailed judicial review, *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 614 (D.S.C.1998). Essentially, an arbitration provision is substantively unconscionable if it "create[s] an arbitration procedure that favors one party over another." *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 n. 5 (3d Cir.2000).

*First Bank of Delaware,* 735 F.Supp. 2d at 181. In determining the substantive unconscionability of class action waiver provisions, in essence, the "critical issue is whether the particular class action waiver effectively ensures that a defendant will never face liability for wrongdoing." *Cronin v. CitiFinancial Servs., Inc.,* 352 F. App'x 630, 635 (3d Cir. 2009).

In support of her argument that the class action waiver is substantively unconscionable, Black submits that the consumer's ability to pursue relief is effectively foreclosed by the class action waiver, due to price fixing arrangements that only marginally increase the price thereby making the dispute uneconomical to arbitrate on an individual basis. She thus contends that because the arbitration agreement is so one-sided, she should be afforded an opportunity to brief the threshold factual issue of whether the "class action waiver effectively ensures that a defendant will never face liability for wrongdoing,"[23] in accordance with *Cronin,* 352 F. App'x at 635. In order to do so, Plaintiff requests leave of court to conduct discovery as to the potential damages that she can individually obtain against DFS, and the relative costs of litigation versus arbitration. In response, DFS disputes Plaintiff's argument that her ability to pursue relief is effectively foreclosed by the class action waiver, arguing in support that Plaintiff ignores provisions in the Sherman Act that allow a prevailing plaintiff to recover treble damages and

---

[23] As far as Plaintiff's request for the opportunity to brief the "threshold factual issue of whether the 'class action waiver effectively ensures that a defendant will never face liability for wrongdoing,'" that opportunity has come and gone. This argument is a legal one and does not require the discovery of "facts" in order to be made.

attorneys' fees, and the provision in the Cardmember Agreement which authorizes Plaintiff to require DFS to pay her arbitration fees and costs (Cardmember Agreement at 11-12, Ex. 10 to Linian Decl.).[24] Thus, DFS contends there is no substantive unconscionability here.

The Court agrees with DFS and finds that the class action waiver does not effectively foreclose Plaintiff's ability to pursue relief. Plaintiff has failed to show that any of the factors indicative of substantive unconscionability are present here. Plaintiff's argument focuses only on two of these factors—damages obtainable and costs of litigation versus arbitration—and, thus, the Court's discussion will be limited to those factors.

In the Complaint, Black seeks monetary damages in the form of disgorgement, restitution, treble damages, penalties and any other monetary relief allowed by law, plus the costs of suit and reasonable attorneys' fees (Compl., Prayer for Relief), all of which are recoverable under the Sherman Act, 15 U.S.C. §15(a). The arbitration provision at issue here authorizes the arbitrator to "award all remedies permitted by the substantive laws that would apply if the action were pending in court." Ex. 4 to Linian Decl. at 12. Thus, the full range of remedies under the Sherman Act are potentially recoverable in arbitration. *Cronin,* 352 F. App'x at 636 (citing *West Suburban Bank,* 225 F.3d at 373). Moreover, Black's ability to recover attorneys' fees under the Sherman Act "help to preserve an individual's ability to pursue claims, even in those situations where the class forum has been foreclosed." *Id.* (citing *West Suburban Bank,* 352 F. App'x at 374) (other citation omitted). Additionally, where, as in this case, the claim involves an alleged

---

[24] The Cardmember Agreement actually states that at the cardmember's request, "[Discover] will ***advance*** any arbitration filing, administrative and hearing fees which [the cardmember] would be required to pay to pursue a claim or dispute as a result of [its] electing to arbitrate that claim or dispute. . . . The arbitrator will decide who will ultimately be responsible for paying those fees. [The cardmember] will only be responsible for paying or reimbursing our arbitration filing, administrative or hearing fees to the extent [the cardmember] would have been responsible for paying "attorneys' fees and court or other collection costs" had the action proceeded in court. In no event will [the cardmember] be required to pay any fees or costs incurred by us in connection with an arbitration proceeding where such a payment or reimbursement is prohibited by applicable law." (Emphasis added.)

violation of federal antitrust laws, the ability to recover treble damages increases the value of the claim, thus making it more attractive and one that is likely to be pursued on an individual basis. Thus, these factors do not support a finding that the class action waiver effectively ensures that DFS will never face liability for wrongdoing.

Next Plaintiff argues that she should be allowed discovery as to the potential damages she can recover individually, and as to the relative costs of litigation versus arbitration. The Court finds that discovery is not warranted in this case. The amount of "potential damages" Plaintiff can individually obtain from DFS is simply irrelevant to the substantive unconscionability inquiry. *See AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1753 (2011) (rejecting dissent's argument that class actions are necessary to bring small-dollar claims that might otherwise slip through the legal system, finding any such requirement would be inconsistent with the FAA); *Litman*, 2011 U.S. App. LEXIS 17649, at *16 (noting that Supreme Court's holding in *Concepcion* applied regardless of whether class arbitration "'is desirable for unrelated reasons'") (citing *Concepcion,* 131 S.Ct. at 1753).

Likewise, the costs of arbitration versus litigation are easily determined without the need for discovery. The arbitration filing, administrative and hearing fees are all a matter of public record. *See* American Arbitration Association website, http://www.adr.org/sp.asp?id=29297. More importantly, under the arbitration provision at issue here, Plaintiff's up-front costs to arbitrate are actually less than the costs of litigation. Under the arbitration provision, upon request, DFS will advance the arbitration filing, administrative and hearing fees. (Ex. 10 attached to Linian Decl. at 11-12.) Ultimately, the arbitrator decides who will be responsible for paying these fees after a decision on the merits. (*Id.* at 12.) However, consumers will only be responsible for paying these fees to the extent they would have been responsible for paying

attorneys' fees and court costs had the action proceeded in court.  (*Id.*)  Thus, this factor actually provides an advantage to proceeding in the arbitral forum.

For all of these reasons, the Court cannot conclude that class action waiver effectively ensures that DFS will never face liability for its alleged wrongdoing.  Consequently, the class action waiver is not substantively unconscionable under Pennsylvania law.  As Plaintiff has failed to demonstrate that the class action waiver provision is both procedurally and substantively unconscionable under Pennsylvania law, the Court finds that the class action waiver provision is enforceable.

While this motion was pending, the Supreme Court rendered its decision in *AT&T Mobility LLC v. Concepcion,* 131 S.Ct. 1740 (2011), which appears to foreclose Plaintiff's argument that the class action waivers in arbitration agreements are unconscionable under Pennsylvania law, or that she needs discovery to determine the amount of her potential damages and the costs of arbitration versus litigation.  On May 2, 2011, DFS filed a Notice of Subsequent Authority (ECF No. 83), notifying this Court of the Supreme Court's decision in *Concepcion,* and arguing that *Concepcion* is dispositive here with regard to Plaintiff's argument that the class action waiver is unconscionable under Pennsylvania law.  Thereafter, on August 16, 2011, DFS filed a second Notice of Subsequent Authority ECF No. 85), notifying the Court of Judge Shapiro's recent decision in *Alfeche v. Cash Am. Int'l, Inc.,* Civ. A. No. 09-0953, 2011 WL 3565078, *5 (E.D.Pa. Aug. 12, 2011).  Plaintiff has not filed any response to either notice.

On August 24, 2011, the United States Court of Appeals for the Third Circuit issued its decision in *Litman v. Cellco Partnership,* No. 08-4103, 2011 U.S. App. LEXIS 17649 (3d Cir. Aug. 24, 2011), on remand from the Supreme Court, wherein it reconsidered its prior decision in light of the Supreme Court's recent decision in *Concepcion.*  The question facing the court of

appeals was whether the FAA preempts the New Jersey Supreme Court's ruling in *Muhammad v. County Bank of Rehoboth Beach, Del.*, 912 A.2d 88 (N.J. 2006), which held that a class action waiver in a consumer contract of adhesion (payday loan agreement) was unconscionable and, therefore, unenforceable because it deprived the plaintiff of the "mechanism of a classwide action, whether in arbitration or in court litigation." 912 A.2d at 101.[25]

In *Litman,* plaintiffs brought a putative class action against a telecommunications provider under New Jersey common law and the New Jersey Consumer Fraud Act for allegedly charging fixed-price customers improper service charges on their cell phone service. 2011 U.S. App. LEXIS 17649, at *3. The service contract contained an arbitration provision precluding class actions. *Id.* at *4. In its prior opinion, *Litman v. Cellco Partnership,* 381 F. App'x 140 (3d Cir.2010), the panel held that pursuant to *Homa,* the FAA did not preempt *Muhammad.* Upon

---

[25] In reaching this conclusion, the *Muhammad* court considered the public interests implicated by the arbitration agreement. 912 A.2d at 99. As the court of appeals noted in *Litman*:

> [The *Muhammad* court] noted that, "when ... found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages," class waivers are problematic since "'rational' consumers may decline to pursue individual consumer-fraud lawsuits because it may not be worth the time spent prosecuting the suit, even if competent counsel was willing to take the case." *Id.* [at 99] (emphasis original). Thus, the court opined, such class action waivers "functionally exculpate wrongful conduct." *Id.* at 100. As a result, the waivers compromise "[t]he public interest at stake in ... consumers effectively ... pursu[ing] their statutory rights under [New Jersey's] consumer protection laws," and that interest, the court concluded, "overrides ... enforcement of the class-arbitration bar in th[e] agreement[s]." Id. at 101.

2011 U.S. App. LEXIS 17649, at *5-6 n. 2. Similarly here, Pennsylvania law favors class action arbitrations and has held class action waivers in arbitration agreements, that effectively foreclose pursuit of small dollar amount claims, are unconscionable and unenforceable. *See, e.g. Thibodeau,* 912 A.2d at 881-85 (discussion cases). Thus, given the similarities between New Jersey and Pennsylvania law, the Court finds that the holding in *Concepcion* applies with equal force to the case at bar. *Alfeche,* 2011 U.S. Dist. LEXIS 90085, at *17 (concluding that the "Pennsylvania Superior Court's decision in *Thibodeau,* in its analysis of the circumstances under which class action waivers are procedurally and substantively unconscionable, has the effect of requiring the availability of classwide arbitration[,]" which "undermines the FAA's central purpose and is preempted by the FAA.") (citing *Thibodeau,* 912 A.2d at 885-86; *Concepcion,* 131 S.Ct. at 1753).

reconsideration after the Supreme Court's decision in *Concepcion,* the court of appeals held that "*Homa* has been abrogated by *Concepcion* and that *Muhammad* is preempted by the FAA." 2011 U.S. App. LEXIS 17649, at 11. After analyzing *Concepcion,* the court of appeals in *Litman* stated unequivocally, "[w]e understand the holding of *Concepcion* to be both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons.'" *Id.* at *16 (quoting *Concepcion,* 131 S.Ct. at 1753). The last part of this holding, "irrespective of whether class arbitration 'is desirable for unrelated reasons,'" refers to the Supreme Court's consideration and rejection of the argument that class actions "are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *Concepcion,* 131 S.Ct. at 1753. This part of the Supreme Court's opinion appears to be directed specifically to those factors indicating the substantive unconscionability of an arbitration provision. As such, Plaintiff's argument in support of substantive unconscionability is undercut by the Supreme Court's ruling in *Concepcion.*

Thus, given the apparent broad sweep of the Supreme Court's holding in *Concepcion,* as acknowledged in *Litman*, the Court finds that to the extent Pennsylvania law holds that class action waivers in arbitration agreements are unconscionable and therefore unenforceable, the FAA preempts Pennsylvania law. Accordingly, the arbitration provision at issue here must be enforced according to its terms, which requires arbitration of individual claims and forecloses class actions.

For the reasons set forth above, the Court concludes that the arbitration clause is enforceable, and therefore, recommends that Discover Financial Service's motion to compel arbitration of Plaintiff's individual claims be granted. Pursuant to Section 4 of the FAA, this

Court also recommends that the present action be stayed as to the claims against DFS and the case administratively closed.

### E.   Discover's Motion to Dismiss

Because this Court has determined that the arbitration clause at issue here is valid and enforceable, this Court lacks jurisdiction to address the merits of DFS's motion to dismiss under Rule 12(b)(6).  "Where a dispute is subject to a binding arbitration agreement, a 'district court [is] … without jurisdiction to address the merits of the complaint.'" *Trenton Metro. Area Local of Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,* 636 F.3d 45, 56 (3d Cir. 2011) (quoting *Shaffer v. Mitchell Transport, Inc*., 635 F.2d 261, 264 (3d Cir. 1980)) (footnote omitted). Accordingly, the Court recommends that Plaintiff's Motion to Dismiss the Complaint against DFS (ECF No. 28) be denied as moot.

## III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion of Defendant Discover Financial Services to Compel Arbitration of Plaintiff's individual claims (ECF No. 28) be granted and the Motion to Dismiss the Complaint be denied as moot.  It is further recommended that this case be stayed, only as to the claims against Defendant Discover Financial Services, while Plaintiff submits her claim to arbitration, and the case be administratively closed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2  of the Local Rules of Court, the parties shall have fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto.  Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response.  A party's failure to file timely objections will constitute a waiver of

that party's appellate rights.

Dated: August 25, 2011

BY THE COURT:

LISA PUPO LENIHAN
Chief U.S. Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*